**DICKINSON WRIGHT PLLC**
STEVEN A. CALOIARO
Nevada Bar No. 12344
Email: scaloiaro@dickinsonwright.com
8363 West Sunset Road, Suite 200
Las Vegas, Nevada  89113-2210
Tel: (702) 550-4400
Fax: (844) 670-4009

*Attorney for Plaintiff*
*SATA GmbH & Co. KG*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| SATA GmbH & Co. KG, a German Corporation,<br><br>             Plaintiff,<br><br>v.<br><br>PHOENIX AUTOMOTIVE REFINISHING, a Foreign entity,<br><br>             Defendant. | CASE NO.:<br><br>**COMPLAINT**<br><br>**(JURY DEMAND)** |

Plaintiff SATA GmbH & Co. KG ("SATA") hereby states its complaint against Defendant PHOENIX AUTOMOTIVE REFINISHING ("Phoenix") as follows:

### INTRODUCTION

SATA is a world leader in the production of paint spray guns, airbrushes, workplace safety and security equipment, and other related products.  The 2017 SEMA trade show is currently underway at the Las Vegas Convention Center in Las Vegas, Nevada.  Phoenix is making its once-yearly appearance in the U.S. to exhibit and offer for sale a paint spray gun that infringes SATA's federally registered trademarks and design patents.

### JURISDICTION AND VENUE

1.      This is an action for statutory trademark counterfeiting, trademark infringement, false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. §



1

1051, *et seq.*; for common law trademark infringement and unfair competition; and for patent infringement in violation of 35 U.S.C. § 1, *et seq.*

2.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1119 and 1121, and pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, because this action presents questions arising under the trademark and patent laws of the United States to which Congress has granted exclusive subject matter jurisdiction to the federal courts. This Court has supplemental jurisdiction over Plaintiff's common law claims.

3.     This Court has personal jurisdiction over Phoenix based upon its infringing acts of advertising, displaying, and offering for sale counterfeit goods bearing SATA's marks in Las Vegas, Nevada, as well as a website that is accessible in the district.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and 1400(b) because the Phoenix does business in Nevada, has committed acts of infringement in Nevada, and is subject to personal jurisdiction in Nevada.

### THE PARTIES

5.     SATA is a German corporation established in 1907 and organized under the laws of Germany.

6.     Upon information and belief, Phoenix is Chinese Company located at 2 Haoyun Road, 311112 Hangzhou, China.

### GENERAL ALLEGATIONS

#### *Background on SATA*

7.     SATA is a leading manufacturer of paint spray guns, paint spray gun reservoirs, and related equipment principally used to paint automobiles.

8.     SATA's products are designed and manufactured in Germany and are sold to distributors worldwide.

9.     Over the past century, SATA has been a leader in the production of paint spray guns, paint spray gun reservoirs, and related equipment.  SATA's paint spray guns are highly valued, well known for their quality, performance, and durability, and are used by professional

DICKINSON WRIGHT
ATTORNEYS AT LAW

car repair businesses, automobile manufacturers, yacht and boat builders, carpenters, painters, airbrush/design creators, and hobbyists worldwide.

10.     SATA offers a wide variety of paint spray guns, including handheld spray guns and spray guns for automatic painting systems.

11.     SATA's strong reputation and goodwill in the industry is further bolstered by its strong commitment to aiding users of SATA products through free online, telephone, and in-person training services, such as painting tips, forum discussions, useful measurement calculators, video tutorials, and even an encyclopedia of terms.

12.     Due to the quality of its products and its international reputation for technological innovation, SATA has achieved extensive sales throughout the United States and the world.  In the United States, SATA annually produces and sells in excess of 100,000 paint spray guns and paint spray gun reservoirs.  Over the last five years, on average, SATA enjoyed annual sales in the United States in excess of $15 million dollars.  Internationally, SATA has annual sales in excess of $80 million dollars.

13.     SATA also has prominently and extensively advertised and promoted products and services offered under the SATA Marks, throughout the United States and the world, through such varied media as the internet, newspapers and magazines, and point-of-sale displays. SATA also operates websites at the <sata.com> and <satausa.com> domain names.  As a result, SATA has developed substantial and valuable goodwill in the SATA Marks.

14.     For many years, SATA has expended millions of dollars annually in advertising and promoting and marketing the SATA Marks in the United States.

### *SATA's Trademark Rights*

15.     SATA owns approximately ninety-two (92) United States trademark registrations for a variety of trademarks used in connection with SATA's products (hereinafter the "SATA Marks").  The trademarks at issue in this case are:

- U.S. Trademark Registration No. 2,770,801 (incontestable), a design mark for a **green** band of color extended around the circumference of a paint spray gun air

cap ring, the **green** band being narrower than the air cap ring, covering "paint spray guns"; and

- U.S. Trademark Registration No. 2,793,583, (incontestable), a design mark for a band of [any] color extended around the circumference of a paint spray gun air cap ring, the color band being narrower than the air cap ring and of a color that contrasts with the air cap ring, covering "paint spray guns"; and

- U.S. Trademark Registration No. 3,072,417, (incontestable), a design mark for a band of **red** color extending around the circumference of a paint reservoir for a paint spray gun, the band of **red** color extends around the circumference of the paint reservoir directly under the screw cap and has a width of approximately 5-20 mm, covering "PAINT SPRAY GUNS AND PARTS THEREOF";

- U.S. Trademark Registration No. 3,153, 260, (incontestable), a design mark for Green Platelet.

- True and correct copies of the marks at issue are attached hereto as **Exhibit A**.

16.     Through a long period of usage by SATA, the SATA Marks are well-known and famous to customers and potential customers.   The SATA Marks serve as an indicator of the origin and source of the goods sold and provided by SATA.

17.     The SATA Marks are arbitrary and inherently distinctive.

### *SATA's Patent Rights*

18.     In addition to its federal trademark registrations, SATA also possesses substantial patent rights including, without limitation, seventy-nine (79) patents (both utility and design) registered with the United States Patent and Trademark Office.   In this case, there are two design patents at issue: U.S. D459,432 and U.S. D459,433 (hereinafter the "SATA Patents").   Attached hereto as **Exhibit B** are true and correct copies of the SATA Patents.



- U.S. D459,432 ("'432 Patent")

Claim: The ornamental design for a **spray gun head ring**, as shown and described.



FIG. 1

### *Relevant Description*

Those portions of the structures shown in the drawings in form of broken lines represent parts of the gun other than the spray head ring. The specific shape of these parts does not limit the present design. Diagonal hatching in the figures represents **any shade of green coloration**. Open areas adjacent the diagonal hatching signify surface finish(es) that is/are colored or uncolored, including metallic finish, such as chrome, nickel or any other silvery, metallic finish. for a contrasting color spray gun head ring; and

- U.S. D459,433 ("'433 Patent")

Claim: The ornamental design for a **spray gun head ring**, as shown and described.



FIG. 1

Those portions of the structures shown in the drawings in form of broken lines represent parts of the gun other than the spray head ring. The specific shape of these parts does not limit the present design. **Solid black shading represents color contrast in the sense that the area(s) so shaded, which may be of any "color",** for example red, blue or black, is/are in color contrast with adjacent areas of the design.  Open areas adjacent the solid black shading signify surface finish(es) that is/are colored or uncolored, including metallic finish, such as chrome, nickel or any other silvery, metallic finish.

### *The 2017 SEMA Trade Show*

19.    The SEMA trade show is one of the largest annual trade shows canvassing the $477 billion automotive aftermarket industry. Manufacturers and suppliers who attend SEMA represent everything from air conditioning to computer systems, to paint/coating body repair, hand tools, and similarly situated companies.  Exhibitors at SEMA generate business (i.e., buy and sell products) and develop and maintain business relationships with key customers and suppliers.

20.    Typically, exhibitors will take orders and then ship them from their home countries.

21.    SEMA is currently being held between Tuesday, October 31, 2017, and Friday, November 3, 2015, at the Las Vegas Convention Center in Las Vegas, Nevada, and features thousands of exhibitors and exhibitor booths.

22.    The 2016 SEMA trade show drew nearly 75,000 domestic and international buyers, and approximately 160,000 attendees.

### *Discovery of Infringement*

23.    On Tuesday, October 31, 2017, SATA representatives attended the SEMA trade show.

24.    While at the show, SATA representatives observed Phoenix advertising and offering for sale paint spray guns, paint spray gun reservoirs, and related products at SEMA Booth No. 16826.



6

25.    At its booth Phoenix had several pieces of marketing material including large brochures and product posters.

26.    The large color brochure identifies Phoenix's products by name, picture, and product number.

27.    The brochure was advertising, offering for sale, and selling Phoenix's 414.172 LVMP GRAVITY SPRAY GUN, ("Infringing Product").  The Infringing Product infringes upon each of SATA's Marks and Patents.

28.    SATA took photographs of the Infringing Product being advertised in a Catalog. True and accurate copies of the photographs are attached hereto as **Exhibit C**.

29.    SATA also discovered that Phoenix operates a website at http://phoenixrefinish.com/index.html.  The website contains an advertisement for the Infringing Product which is seen below.



32.    A true and accurate screenshot of the Infringing Product is attached hereto as **Exhibit D**.



33.     PHOENIX is a foreign company that outside of online sales does not appear to have a known or regular presence in the United States.  Once SEMA is over (this Thursday), PHOENIX will leave the United States, presumably with orders for the Infringing Product that infringe SATA's trademarks and design patents, and will continue to sell the Infringing Product from its business location in China to customers located all over the world including the United States.

34.     One of SATA's major business challenges and a significant threat to its market is the manufacture and sale of infringing and copyright products from China.

## COUNT I - TRADEMARK COUNTERFEITING - 15 U.S.C. § 1114

35.     SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

36.     Phoenix has used spurious designations that are identical with, or substantially indistinguishable from, the SATA Marks on identical goods.

37.     Phoenix has intentionally used these spurious designations, knowing they are counterfeit, in connection with the advertisement, promotion, sale, offering for sale and distribution of the Infringing Product.

38.     Phoenix's use of the SATA Marks to advertise, promote, offer for sale, distribute and sell the Infringing Product bearing infringing trademarks was at all times and is currently without SATA's authorization, license, or consent.

39.     Phoenix's unauthorized use of the SATA Marks on and in connection with Phoenix's advertisement, promotion, sale, offering for sale, and distribution of the Infringing Product constitutes a use of the SATA Marks in commerce.

40.     Phoenix's unauthorized use of the SATA Marks is likely to: (a) cause confusion, mistake and deception; (b) cause the public to believe that the Phoenix's Infringing Product is legitimate, and/or that the Infringing Product is authorized by, sponsored by, or approved by SATA, or that Phoenix is affiliated with, connected to, associated with, or in some way related to SATA; (c) result in Phoenix unfairly benefiting from SATA's advertising and promotion; and (d)



8

result in Phoenix unfairly profiting from SATA's reputation and trademarks all to the substantial and irreparable injury of the public, SATA, the SATA Marks, and the substantial goodwill they represent.

41.     Phoenix's acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

42.     By reason of the foregoing, Phoenix is liable to SATA for: (a) statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act, or, at SATA's election, an amount representing three (3) times SATA's damages and/or Phoenix's illicit profits; and (b) reasonable attorney's fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

43.     SATA is also entitled to temporary, preliminary, and permanent injunctive relief pursuant to 15 U.S.C. § 1116(d).

## COUNT II - TRADEMARK INFRINGEMENT - 15 U.S.C. § 1114

44.     SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

45.     Without SATA's authorization, license, or consent, Phoenix has knowingly used and continues to use in commerce the SATA Marks in connection with the manufacturing, adverting, promoting, importing into, and selling in the United States the Infringing Product. Phoenix has used the SATA Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to, and/or trade off SATA's fame and the registered SATA Marks.

46.     Phoenix's use of the SATA Marks is likely to: (A) confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Phoenix and SATA and/or the Infringing Product and SATA's products; and (B) is likely to cause such people to believe in error that the Infringing Product have been authorized, sponsored, approved, endorsed, or licensed by SATA or that the Infringing Product is in some way affiliated with SATA.


DICKINSON WRIGHT
ATTORNEYS AT LAW

47.     SATA has no control over the Phoenix's use of the SATA Marks and cannot control the fact that the Phoenix is using the SATA Marks to create the Infringing Product. Therefore, SATA's reputation and goodwill has been and continues to be damaged – and the value of the SATA Marks jeopardized – by Phoenix's continued use of the SATA Marks and colorable imitations thereof.  Because of the likelihood of confusion between the Infringing Product and the SATA Marks, any defects, objections, or faults found with the Infringing Product will negatively reflect upon and injure the exceptional reputation that SATA has established for the products and services it offers in connection with the SATA Marks.  As such, Phoenix is liable to SATA for infringement of the SATA Marks pursuant to 15 U.S.C. § 1114.

48.     Phoenix's acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to SATA's trademarks, business, reputation, and goodwill.  SATA has no adequate remedy at law as monetary damages are inadequate to compensate SATA for the injuries caused by Phoenix to its trademarks, business, reputation, and goodwill.

49.     As a direct and proximate result of Phoenix's conduct, SATA has suffered and continues to suffer damages to its valuable SATA Marks, and other damages in an amount to be proven at trial.

50.     Phoenix's infringement of SATA's registered trademarks is deliberate, willful, fraudulent and without any extenuating circumstances, and constitutes a knowing use of the SATA Marks, and an exceptional case within the meaning of 15 U.S.C. § 1117(b).

51.     SATA is entitled to temporary, preliminary, and permanent injunctive relief, as well as an award of Phoenix's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

### COUNT III - FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION - 15 U.S.C. § 1125

52.     SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

10

53.     Phoenix's use, promotion, offers to sell, sale, and/or importation of the Infringing Product violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The SATA Marks are federally registered, and are entitled to protection under both federal and common law.  The SATA Marks have distinctive appearances with unique and non-functional designs.  SATA has extensively and continuously promoted and used the SATA Marks for many decades in the United States and worldwide.  Through that extensive and continuous use, the SATA Marks have become well-known indicators of the origin and quality of SATA's products and have acquired substantial secondary meaning in the marketplace.

54.     Phoenix's use of colorable imitations of the SATA Marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the Infringing Product by creating the false and misleading impression that the Infringing Product are manufactured by, authorized by, or otherwise associated with SATA.

55.     Phoenix's use of colorable imitations of the SATA Marks has caused, and unless enjoined, will continue to cause substantial and irreparable injury to SATA for which SATA has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the SATA Marks.

56.     On information and belief, Phoenix's use of colorable imitations of the SATA Marks has been intentional and willful.  Phoenix's bad faith is evidenced at least by Phoenix's use of marks identical to the SATA Marks on the Infringing Product.  SATA is entitled to injunctive relief, and SATA is also entitled to recover Phoenix's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116, and 1117.

### COUNT IV COMMON LAW TRADEMARK INFRINGEMENT & UNFAIR COMPETITION

57.     SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.



58.     SATA was the first to use the SATA Marks.  As a result of SATA's continuous promotion and sales of products bearing the SATA Marks, the SATA Marks have become widely known and SATA has been identified in the public mind as the manufacturer of the products to which the SATA Marks are applied.

59.     As a result of the experience, care, and service of SATA in producing the products to which the SATA Marks are applied, these products have become widely known and have acquired a worldwide reputation for quality, styling, and utility.  Moreover, the SATA Marks have come to symbolize SATA's reputation for quality and excellence.  The SATA Marks have also acquired secondary meaning in the marketplace, and are non-functional.

60.     Phoenix, with knowledge of and with intentional disregard of SATA' rights, continues to advertise, promote, and sell products using the SATA Marks, or colorable and confusing imitations thereof.  Phoenix's acts are likely to cause, have caused, and will continue to cause confusion as to the source and/or sponsorship of SATA's products and services.

61.     Phoenix's acts alleged herein and specifically, without limitation, Phoenix's use, manufacture, promotion, offers to sell, selling, and/or importing into the United States products that are confusingly similar to products bearing the SATA Marks, infringes SATA' exclusive trademark rights in violation of the common law.

62.     Phoenix's acts alleged above have caused, and if not enjoined will continue to cause, irreparable and continuing harm to SATA's trademarks, business, reputation, and goodwill.  SATA has no adequate remedy at law because monetary damages are inadequate to compensate SATA for the injuries caused by Phoenix to its trademarks, business, reputation, and goodwill.

63.     On information and belief, Phoenix's use of colorable imitations of the SATA Marks has been intentional and willful.  Phoenix's bad faith is evidenced at least by Phoenix's use of marks identical to the SATA Marks on the Infringing Product.  SATA is entitled to injunctive relief, and SATA is also entitled to recover Phoenix's profits, actual damages, punitive damages, costs, and reasonable attorneys' fees.

### _Design Patent Infringement - 35 U.S.C. §§ 171 and 289_

64.     SATA hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

65.     Without SATA's authorization, license, or consent, Phoenix has and is continuing to make, use, offer to sell, sell, and/or import into the United States its Infringing Product, which infringe SATA's design patents USD 459,432 and USD 459,433.

66.     Phoenix infringes on the SATA Design Patents, USD 459,432 and USD 459,433 because, _inter alia,_ in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the design of paint spray guns and packaging claimed and disclosed in SATA Design patents are substantially the same as the Phoenix's Infringing Product.  The resemblance is as such that an ordinary observer, would likely purchase the Phoenix's Infringing Product, believing it to be SATA's products.

67.     Phoenix's acts of infringement of the SATA Design Patents were undertaken without authority, permission, or license from SATA.  Phoenix's activities violate 35 U.S.C. § 271.

68.     SATA has been and continues to be irreparably harmed by Phoenix's past and ongoing infringement of SATA's design patents.

69.     Phoenix's infringement of SATA's design patents has caused SATA to suffer damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, SATA respectfully prays for:

A.      Judgment that Phoenix has: (i) willfully engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114; (ii) willfully infringed the SATA Marks in violation of 15 U.S.C. § 1114; (iii) willfully used false designations of origin and/or engaged in unfair competition in violation of 15 U.S.C. § 1125(a); (iv) willfully violated SATA's common law rights in the SATA Marks; and (v) willfully infringed the SATA Patents in violation of 35 U.S.C. §§ 171 and 289;

B.      A temporary, preliminary, and permanent injunction against further counterfeiting, infringement, false designation of origin, and unfair competition directed against the SATA Marks, by Phoenix, its agents, servants, employees, attorneys, and all others in active concert or participation with any of them;

C.      A finding that this is an exceptional case within the meaning of 15 § U.S.C. 1117(a);

D.      An award of damages adequate to compensate SATA for the trademark infringements that have occurred pursuant to 15 U.S.C. § 1117(a), which amount shall include Phoenix's profit's, SATA's damages, and the costs of the action;

E.      At SATA's election, either: (1) an award of damages adequate to compensate SATA for the intentional acts of trademark counterfeiting that have occurred, pursuant to 15 U.S.C. § 1117(b), which amount shall include three times of Phoenix's profits or SATA's damages (whichever is greater), together with reasonable attorneys' fees; or (2) statutory damages in the amount of: (i) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just; or (ii) if the Court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just;

14

F.      An award of damages adequate to compensate SATA for the patent infringements that have occurred pursuant to 35 U.S.C. § 284, or an award of Phoenix's profits from its infringements pursuant to 35 U.S.C. § 289, whichever is greater, together with prejudgment interest and costs; and

G.      Such other and further relief as this Court deems just and proper.

DATED this 31st day of October 2017.

DICKINSON WRIGHT PLLC


/s/ Steven A. Caloiaro
STEVEN A. CALOIARO
Nevada Bar No. 12344
Email: scaloiaro@dickinsonwright.com
8363 West Sunset Road, Suite 200
Las Vegas, Nevada  89113-2210
Tel: (702) 550-4400
Fax: (844) 670-4009

*Attorneys for Plaintiff*
*SATA GmbH & Co. KG*



**EXHIBIT TABLE**

| Exhibit | Description | Page(s)[1] |
|---|---|---|
| A | True and correct copies of SATA U.S. Trademark Registration Certificates | 4 |
| B | True and correct copies of the SATA U.S. Patents | 14 |
| C | True and correct copy of the Infringing Product advertised in Defendant's Catalog | 2 |
| D | True and correct copy of Infringing Product on Defendant's Website | 2 |

---

[1] Exhibit page counts are exclusive of exhibit slip sheets.