## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| SATA GmbH & Co. KG, a German corporation,<br><br>Plaintiff,<br><br>v.<br><br>Phoenix Automotive Refinishing, a foreign entity,<br><br>Defendants. | Case No. 2:17-cv-02753-JAD-NJK<br><br>**Order Granting Motion for Default Judgment, Permanent Injunction, and Attorney Fees**<br><br>**ECF Nos. 9, 12** |

After today's hearing on Plaintiff SATA GmbH & Co. KG Motion for Default Judgment, Permanent Injunction, and Attorney Fees **[ECF Nos. 9, 12]**, default having been entered against defendant Phoenix Automotive Refinishing, and having found that the factors outlined by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) weigh in favor of entering default judgment, finds and concludes as follows:

### BACKGROUND *

SATA is a century-old German corporation that manufactures paint spray guns and related equipment worldwide. (ECF No. 9 at 2). SATA's United States-directed business produces over $15 million annually with more than 100,000 paint spray guns and reservoirs sold. *Id*. at 3. SATA owns four trademark registrations that it claims Phoenix infringed: (1) a design mark for a green band of color extended around the circumference of a paint spray gun air cap ring (Registration No. 2,770,801); (2) a design mark for a band of any color extended around the circumference of a paint spray gun air cap ring (Registration No. 2,793,583); (3) a design mark for a band of red color

---

* These background facts are deemed admitted by virtue of the default.

extending around the circumference of a paint reservoir for a paint spray gun (Registration No. 3,072,417); and (4) a design mark for a green platelet (Registration No. 3,153,260). *Id*. at 3-4. SATA also has two design patents that it claims Phoenix infringed: (1) an ornamental spray-gun design (Patent No. US D459,432); and (2) an ornamental design for a paint spray gun head ring (Patent No. US D459,433). *Id*. at 4. SATA uses the SATA Marks to advertise and promote its products throughout the United States and the world. *Id*. at 3.

On October 31, 2017, SATA representatives attended the SEMA trade show in Las Vegas, Nevada, and observed Phoenix advertising and offering for sale paint spray gun 414.172 LVMP GRAVITY SPRAY GUN (the "Infringing Product"). *Id*. at 5. SATA also discovered that Phoenix operates a website containing advertisements for the Infringing Product. *Id*. The website also includes the Infringing Product. *Id*. SATA then filed this suit, asserting trademark counterfeiting, trademark infringement, unfair competition, and patent infringement. (ECF No. 1 at 8-13). Phoenix was served with a copy of the Complaint by personal service on November 1, 2017, but it has not responded or otherwise appeared in this case. (ECF No. 9 at 2). On SATA's motion, the Clerk of the Court entered default against Phoenix. (ECF No. 9 at 2; ECF No. 8).

## DISCUSSION

### A. Default Judgment Standard

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain a default judgment after the clerk enters default based on a defendant's failure to defend. After entry of default, the complaint's factual allegations are taken as true except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); Fed R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default." *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992). The court may require a plaintiff to provide additional proof of facts or damages in order to ensure that the requested relief is appropriate. *See* Fed. R. Civ. P. 55(b)(2). Whether to grant a motion for default judgment lies within the district court's discretion,

which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d at 1471 (9th Cir. 1986):

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72.

### B. Analyzing the *Eitel* Factors

#### 1. Possibility of prejudice to plaintiffs

SATA sued Phoenix to stop it from infringing SATA's distinctive design and marks. (ECF No. 9 at 2-5) SATA served Phoenix with adequate process and served Phoenix with SATA's request for entry of clerk's default, clerk's default, and the motion for default judgment. *Id*. at 2. Phoenix ignored all of it. SATA would be prejudiced by requiring SATA to expend additional resources litigating an action that appears to be uncontested. And SATA has no other recourse to prevent Phoenix's further infringement of its trademarks and patents. This factor thus weighs in favor of default judgment.

#### 2. Substantive merits and sufficiency of the claims

The second and third *Eitel* factors require SATA to demonstrate that it has stated a claim on which it may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). SATA sufficiently alleges its trademark infringement, unfair competition, trademark counterfeiting, and design patent infringement claims.

To establish trademark-infringement and unfair-competition claims, SATA must show that: (1) it is the owner of a valid, protectable mark, and (2) Phoenix is using a confusingly similar mark that is likely to cause deception concerning the origin of the goods. 15 U.S.C. § 1114 (2012); 15 U.S.C. § 1116 (2012); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999); *see also New W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1201 (9th Cir. 1979) (explaining that the elements for trademark infringement and unfair competition are essentially the same). SATA has federal trademark registrations for: (1) a design mark for a green

band of color extended around the circumference of a paint spray gun air cap ring (Registration No. 2,770,801); (2) a design mark for a band of any color extended around the circumference of a paint spray gun air cap ring (Registration No. 2,793,583); (3) a design mark for a band of red color extending around the circumference of a paint reservoir for a paint spray gun (Registration No. 3,072,417); and (4) a design mark for a green platelet (Registration No. 3,153,260). SATA has provided screenshots of Phoenix's website showing products with confusingly similar marks during the same time period that SATA was selling its own products. SATA alleges that the concurrent advertising of confusingly similar products is likely to cause deception regarding the origin of the goods. (ECF No. 9 at 10-12).

For its trademark-counterfeiting claim, SATA must show that: (1) it is the owner of a valid, protectable mark; and (2) Phoenix intentionally used the mark in commerce, knowing that it was counterfeit. 15 U.S.C. § 1114(1)(a) (2012). A mark is counterfeit if "[i]t is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i) (2012). If the mark is intentionally and knowingly distributed, a defendant is susceptible to heightened liability. 15 U.S.C. § 1117 (b)(1) (2012); *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005). SATA has valid trademarks for the colored bands and marks, and Phoenix advertises identical, counterfeit versions of those marks for sale. (ECF No. 9 at 8). SATA argues that Phoenix has intentionally counterfeited its marks because: (1) SATA has been a leader in the paint spray gun industry for over a century, so Phoenix would have known of its brand and trademarked design; (2) Phoenix places the exact marks in the exact same place as the SATA Marks; and (3) Phoenix is using its counterfeit mark on paint spray guns, the exact type of good covered by SATA's Marks. (ECF No 9 at 2, 8-9). The Court therefore finds that SATA has sufficiently pled that Phoenix intentionally and knowingly engaged in trademark counterfeiting.

Finally, design-patent infringement is governed by the "ordinary observer" test. *Gorham Mfg. v. White*, 81 U.S. 511, 528 (1871); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672

(Fed. Cir. 2008). Infringement of a design patent occurs if "an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design." *Egyptian Goddess*, 543 F.3d at 672; *see also Gorham*, 81 U.S. at 528. Complete similarity is not required. *Gorham*, 81 U.S. at 527–28 (discussing that an infringing product may be dissimilar to experts as long as it is similar to the ordinary observer). Phoenix's products have the same general visual appearance as SATA's, such that it is likely that a purchaser would confuse Phoenix's product with SATA's patented designs. So, the Court finds that SATA has sufficiently pled all of its claims, and the second and third *Eitel* factors weigh in favor of entering default judgment.

### 3. Amount at stake

The fourth *Eitel* factor requires the Court to consider "the amount of money at stake in relation to the seriousness of [Phoenix]'s conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). SATA seeks $200,000 in statutory damages under the Lanham Act. (ECF No. 9 at 24.) The Lanham Act awards no less than $1,000 and no more than $200,000 in statutory damages "per type of goods or services sold, offered for sale, or distributed," 15 U.S.C. § 1117(c)(1) (2012), and willful infringements increase the statutory-damages ceiling to $2,000,000. 15 U.S.C. § 1117(c)(2) (2012). District courts have "wide discretion" to grant statutory damages within those boundaries. *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990); *see also Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (stating that courts have wide discretion in awarding statutory damages under an analogous provision of the Copyright Act).

As this Court has recognized, "[s]tatutory damages for trademark counterfeiting are particularly appropriate in default cases,"…"where there is a lack of information about a defendant's sales and profits." *Avnet, Inc. v. Avana Techs. Inc.*, 2014 U.S. Dist. LEXIS 177436, *18 (D. Nev. Dec. 3, 2014) (external citations omitted); *see also Hand & Nail Harmony, Inc. v. Guangzhou Shun Yan Cosmetics Co.*, 2015 WL 4378197, at *6 (D. Nev. July 15, 2015). A statutory damages award should "not merely compel[ ] restitution of profit and reparation for injury but also

discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952). The purpose of § 1117 is to take the incentive out of counterfeiting and strengthen the civil remedies against counterfeiters. *See* S.Rep. No. 177, 104th Cong. (1995).

Here, Phoenix intentionally used the SATA Marks in commerce and knew that the marks were counterfeit. When seeking the enhanced award for willful counterfeiting, "an allegation of willful trademark infringement is deemed true on default." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 698 (9th Cir. 2008). As alleged in the Complaint, Phoenix advertised and offered for sale, at the SEMA trade show and online, products containing the infringing marks. (ECF No. 1, ¶¶ 23-34, 36-38, 45, 60.) Further, as alleged in the Complaint, Phoenix knew that the infringing marks were counterfeit of the SATA Marks. *Id*.

Additional factors weigh in favor of awarding two hundred thousand dollars ($200,000) in statutory damages. Phoenix's failure to appear in this action has hindered SATA's ability to discover Phoenix's financial situation or status. Phoenix also has continued to advertise the Infringing Product in its catalog and on its website. (ECF at 9, Caloiaro Decl., Ex. 4.) Finally, Phoenix is a large corporation that conducts international business. *Id*. It should have known better than to infringe upon SATA's federally protected rights. SATA also notes that the requested award is in line with this Court's other decisions. *See Hakkasan LV, LLC v. Adamczyk*, 2015 U.S. Dist. LEXIS 110307, *32 (D. Nev. Aug. 19, 2015); *Hakkasan LV, LLC v. VIP, UNLTD, LLC*, (D. Nev. June 12, 2014).

In light of this information, the Court finds that statutory damages of $200,000 for this willful infringement are appropriate and this sum-at-stake factor weighs in favor of a default judgment.

**4. Possibility of dispute**

The next *Eitel* factor to consider is the possibility that material facts are disputed. SATA adequately alleged its trademark infringement, trademark counterfeiting, patent infringement, and unfair competition claims against Phoenix. Phoenix failed to respond or appear, so all of SATA's well-pled, material facts are admitted and presumed true. So this factor, too, weighs in favor of

default judgment.

### 5. Possibility of excusable neglect

The sixth *Eitel* factor requires the Court to consider whether Phoenix's default may have resulted from excusable neglect. There is no evidence that Phoenix defaulted due to excusable neglect. The record reflects that SATA served Phoenix with process on November 1, 2017, while the company was still in Las Vegas for the SEMA trade show. (ECF No. 9 at 2). Phoenix failed to answer or otherwise respond to the complaint. *Id*. SATA moved for entry of clerk's default on January 2, 2018. *Id*. And this action has been pending for a year, giving Phoenix—who is still absent—ample time to appear in the litigation. So, this factor weighs in favor of default judgment.

### 6. Policy for deciding cases on the merits

"Generally, default judgments are disfavored because cases should be decided upon their merits whenever reasonably possible." *Twentieth Century Fox v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006) (quoting *Eitel*, 782 F.2d at 1472). Phoenix's failure to participate in this case renders a decision on the merits "impractical, if not impossible." *See PepsiCo*, 238 F. Supp. 2d at 1177 (citing *Columbia Pictures Tele., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)). Although this factor almost always weighs against default judgment, the other factors outweigh this policy and balance in favor of a default judgment.

## C. <u>Permanent Injunctive Relief</u>

The Lanham Act permits a court to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further trademark infringement. 15 U.S.C § 1116 (2012); *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). A plaintiff seeking a permanent injunction must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (quotation omitted). "[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a

trademark infringement action." *Herb Reed Enter., LLC v. Florida Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

### 1. Irreparable injury and insufficiency of monetary damages

A permanent injunction is appropriate here because SATA has pled sufficient facts to support an inference of irreparable injury. The Ninth Circuit has recognized that, in trademark cases, irreparable harm may be shown through evidence of the loss of prospective customers, goodwill, or reputation. *Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001). SATA has suffered and will continue to suffer irreparable injury to its goodwill, and monetary damages are inadequate to compensate for SATA's injury. Additionally, despite failing to respond to the Complaint, Phoenix continues to advertise the Infringing Product, export goods and make sales within the United States.

Accordingly, the lost opportunities and diminished value of goodwill resulting from Phoenix's continued infringement of SATA's Intellectual Property will cause irreparable harm. *Toyo Tire & Rubber Co. v. Kabusikiki Kaisha Tokyo Nihoon Rubber Corp*, 2015 WL 6501228, at *3 (D. Nev. Oct. 26, 2015); *See also Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citation omitted) ("[I]ntangible injuries, such as damage to . . . goodwill, qualify as irreparable harm."); *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable.").

Here, SATA has alleged sufficient facts to demonstrate that SATA is a renowned paint spray gun manufacturer that owns federal trademark registrations for its marks and has invested millions of dollars advertising and promoting its products. (ECF No. 1, ¶¶ 7-17.) Further, SATA has established that SATA and Phoenix are competitors in the paint spray gun industry and that Phoenix is using confusingly similar trademarks, and has continued its infringement. Finally, Phoenix is a Chinese company making the recovery of actual monetary damages unlikely. SATA has thus suffered irreparable harm to which there is no adequate remedy.

## 2. Balance of hardships

The hardships also balance in SATA's favor. When balancing hardships, the Court must consider the respective difficulties that SATA and Phoenix would face with and without injunctive relief. *MGM Studios, Inc., v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220 (C. D. Cal 2007). The Court finds no hardships that Phoenix would endure besides being compelled to cease its unlawful conduct. But without an injunction, SATA will continue to be harmed because Phoenix is likely to continue to infringe on SATA's marks and designs. Thus, this factor strongly favors injunctive relief.

## 3. Public interest

The primary purpose of the Lanham Act is to "[p]rotect consumers against deceptive designations of the origins of goods." *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 918 (9th Cir. 1980). Given the similarity between SATA's Marks and Phoenix's counterfeit marks, injunctive relief also serves the interest of the public by protecting consumers from unwittingly purchasing these counterfeit products.

In sum, SATA has shown that it is entitled to a permanent injunction that:

a. Enjoins Phoenix—and its officers, agents, servants, employees, confederates, attorneys, and any persons acting in concert with any of them and who have knowledge of this order by service or actual notice—from using any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks in commerce including, without limitation: (i) by selling, offering for sale, distributing, promoting, or advertising any good or service in connection with such reproduction, counterfeit, copy, or colorable imitation of the SATA Marks; (ii) by displaying any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks on the website accessible through the domain name https://www.PhoenixRefinish.com or any other website owned or controlled by Phoenix or that display Phoenix's products (collectively, the "Enjoined Websites"); or (iii) by displaying any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks at any trade show in the United States, including but not limited to, at any future SEMA trade show; and

b. Enjoins Phoenix—and its officers, agents, servants, employees, confederates, attorneys, and any persons acting in concert with any of them and who have knowledge of this order by service or actual notice—from manufacturing, using, selling, offering to sell, or importing into the United States, (1) an ornamental spray-gun design; and/or (2) an ornamental design for a paint spray gun head ring embodying designs that are the same as or substantially similar to the designs claimed in U.S. design patents 459,432 and 459,433, including, without limitation, by: (i) offering to sell and selling such products to individuals or companies in the United States through the Enjoined Websites or otherwise; or (ii) offering to sell or selling such products at any trade show in the United States, including, but not limited to, at any future SEMA show;

c. Phoenix shall immediately and permanently take down any website, including but not limited to https://www.PhoenixRefinish.com, which was registered on May 26, 2015 with website registrar GoDaddy.com, LLC and in the name of registrant Hangzhou Kapai Gongju Co., Ltd., that contains any depiction, description, or advertisement of product that infringes the intellectual property owned by SATA and asserted in the present action; and

d. To effect the foregoing provisions concerning the cessation of Phoenix's infringing conduct on its website(s), SATA, through its agents or representatives, may serve a copy of this order on the registrant, registrar, registry (at SATA's election), and/or any other persons able to effect a take down of such website(s), along with the requisite identifying information for any such website(s), and the Court hereby directs those persons to effect a cessation of the website(s) owned by Phoenix or its agents or affiliates, and which contains any depiction, description, or advertisement of any product that infringes the intellectual property owned by SATA and asserted in the present action.

D. **Attorney's fees and costs**

SATA also requests attorney's fees in the amount of $5,445.00 and costs of $659.00. (ECF No. 9 at 24). The Lanham Act permits an award of attorneys' fees to the prevailing party in "exceptional cases," 15 U.S.C. § 1117(a) (2012), and the Ninth Circuit has held that willful

infringement cases like this one are "exceptional." *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993)). Pursuant to Local Rule 54-14(b)(1), SATA has provided a reasonable itemization and description of the work performed to support an award of attorneys' fees, and the Court determines that the requested fees are reasonable.

To obtain an award of costs, "A prevailing party who claims costs must file and serve a bill of costs and disbursements on the form provided by the clerk no later than 14 days after the date of entry of the judgment or decree." LR 54–1(a). "A bill of costs and disbursements must be supported by an affidavit and distinctly set forth each item so that its nature can be readily understood. An itemization and, where available, documentation of requested costs in all categories must be attached to the bill of costs." LR 54–1(b). SATA has provided this court with the appropriate bill of costs (ECF No. 10), and is thus entitled to an award of costs.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that SATA's Motion for Default Judgment, Permanent Injunction, and Attorney Fees **[ECF Nos.9, 12] is GRANTED**, and the Clerk of Court is directed to **ENTER JUDGMENT** in favor of SATA GmbH & Co. KG and against Phoenix Automotive Refinishing **as follows**:

   a. Statutory damages in the amount of $200,000.00;
   b. Attorney fees in the amount of $5,445.00;
   c. Costs in the amount of $659.00; and
   d. Post-judgment interest on the principal sum at the judgment rate from the date of entry of the Judgment until paid in full.

IT IS HEREBY FURTHER ORDERED that Phoenix, and its officers, agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with any of them including, without limitation, third parties providing services used in connection with Phoenix's operations and websites owned or controlled by Phoenix (including, without limitation, the website at https://www.PhoenixRefinish.com), including, Internet service providers ("ISPs"),

domain name registries, domain name registrars, banks and other financial institutions, merchant account providers and payment processors (such as PayPal, Inc., Western Union), and any other payment processing service having knowledge of this Order by service or actual notice ("Restrained Parties") are hereby permanently enjoined and restrained from:

    e. Using any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks in commerce including, without limitation: (i) by selling, offering for sale, distributing, promoting, or advertising any good or service in connection with such reproduction, counterfeit, copy, or colorable imitation of the SATA Marks; (ii) by displaying any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks on the website accessible through the domain name https://www.PhoenixRefinish.com or any other website owned or controlled by Phoenix or that display Phoenix's products (collectively, the "Enjoined Websites"); or (iii) by displaying any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks at any trade show in the United States, including but not limited to, at any future SEMA trade show; and

    f. manufacturing, using, selling, offering to sell, or importing into the United States, (1) an ornamental spray-gun design; and/or (2) an ornamental design for a paint spray gun head ring embodying designs that are the same as or substantially similar to the designs claimed in U.S. design patents 459,432 and 459,433, including, without limitation, by: (i) offering to sell and selling such products to individuals or companies in the United States through the Enjoined Websites or otherwise; or (ii) offering to sell or selling such products at any trade show in the United States, including, but not limited to, at any future SEMA show.

IT IS HEREBY FURTHER ORDERED that,

    g. Phoenix shall immediately and permanently take down any website, including but not limited to https://www.PhoenixRefinish.com, which was registered on May 26, 2015 with website registrar GoDaddy.com, LLC and in the name of registrant

Hangzhou Kapai Gongju Co., Ltd., that contains any depiction, description, or advertisement of product that infringes the intellectual property owned by SATA and asserted in the present action; and

h. To effect the foregoing provisions concerning the cessation of Phoenix's infringing conduct on its website(s), SATA, through its agents or representatives, may serve a copy of this order on the registrant, registrar, registry (at SATA's election), and/or any other persons able to effect a take down of such website(s), along with the requisite identifying information for any such website(s), and the Court hereby directs those persons to effect a cessation of the website(s) owned by Phoenix or its agents or affiliates, and which contains any depiction, description, or advertisement of any product that infringes the intellectual property owned by SATA and asserted in the present action.

The Clerk of Court is directed to CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: February 8, 2019